UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JANICE M. WELLMAN,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendants.

Case No. 3:19-cv-263

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

_____

**REPORT AND RECOMMENDATION[1] THAT: (1) THE NON-DISABILITY FINDING AT ISSUE BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**
_____

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB").[2] This case is before the Court upon Plaintiff's Statement of Errors (doc. 10), the Commissioner's memorandum in opposition (doc. 12), Plaintiff's reply (doc. 14), the administrative record (doc. 7), and the record as a whole.[3]

**I.**

    **A.**    **Procedural History**

Plaintiff filed for DIB and SSI alleging a disability onset date of August 30, 2012. PageID 276-89. Plaintiff claims disability as a result of a number of alleged impairments including, *inter*

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed record will refer only to the PageID number.

*alia*, fibromyalgia, asthma, degenerative disc disease of the spine, bursitis of the hips; depression and anxiety. PageID 1587.

After initial denial of her applications, Plaintiff received a hearing before ALJ Gregory G. Kenyon on July 26, 2016. PageID 78. The ALJ issued a written decision on October 31, 2016 finding Plaintiff not disabled. PageID 57-70. Specifically, the ALJ found at Step Five that, based upon Plaintiff's residual functional capacity ("RFC") to perform a reduced range of light work,[4] "there are jobs in that exist in significant numbers in the national economy that [she] can perform[.]" *Id*. Following the Appeals Council's denial of Plaintiff's request for review (PageID 38-40), Plaintiff appealed the ALJ's October 31, 2016 decision to this Court, which reversed the ALJ's non-disability finding and remanded the matter to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for further proceedings. PageID 1680.

On remand, Plaintiff received another hearing before ALJ Kenyon on May 23, 2019. PageID 1617-48. The ALJ issued another written decision on July 16, 2019, again finding Plaintiff not disabled on the basis that, because she retained the RFC to perform a reduced range of light work, a significant number of jobs existed in the national economy that she could perform throughout the relevant time period. PageID 1582-1606. Plaintiff did not seek Appeals Council review of the ALJ's decision on remand and, instead, timely filed this appeal. *See* 20 C.F.R. § 404.984(c) and (d) (in a case remanded by a Federal Court, "[i]f no exceptions are filed and the

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id*. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id*. § 404.1567(a).

Appeals Council does not assume jurisdiction of [the] case, the decision of the [ALJ] becomes the final decision of the Commissioner after remand").

### B. Evidence of Record

The evidence of record is adequately summarized in the ALJ's July 16, 2019 decision (PageID1774-96), Plaintiff's Statement of Errors (doc. 10), the Commissioner's memorandum in opposition (doc. 12), and Plaintiff's reply. The undersigned incorporates all of the foregoing and sets forth the facts relevant to this appeal herein.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity;

2. Does the claimant suffer from one or more severe impairments;

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1;

4. Considering the claimant's RFC, can he or she perform his or her past relevant work; and

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform;

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social

4

Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

On appeal, Plaintiff alleges that that the ALJ erred in: (1) assessing the opinion evidence of record; (2) failing to account for her mental impairments in the RFC; and (3) concluding that her current part-time employment undermines her assertions of disabling symptoms. With regard to the opinion evidence, Plaintiff challenges the ALJ's assessment of opinions offered by treating family physician Sarah Khavari, M.D.; treating pulmonary and critical care physician Mustafa Quadri, M.D.; record-reviewing physicians Linda Hall, M.D. and Michael Delphia, M.D.; record-reviewing psychologists Carl Tishler, Ph.D. and Courtney Zeune, Psy.D.; and treating physical therapist Wendy Chorny. Finding error in the ALJ's assessment of opinions offered by Drs. Khavari, Hall, Delphia, and Ms. Chorny, the undersigned does not address the ALJ's analysis of other medical source opinions or Plaintiff's other alleged errors. Instead, the undersigned would direct that the ALJ consider the alleged errors not addressed herein on remand.[5]

Until March 27, 2017, "the Commissioner's regulations [that apply to this appeal] establish[ed] a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers. *Id*. Under the regulations in effect prior to March 27, 2017, the opinions of treaters are entitled to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical

---

[5] While the undersigned does not address the merits of Plaintiff's argument concerning the ALJ's reliance on Plaintiff's continued part-time work in undermining the severity of her allegations of disabling symptoms and pain, the undersigned does note authority suggesting that a claimant's continued attempts to work despite disability may actually support, rather than undermine, the sincerity of such allegations. *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009); *see also Mebane v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 718, 725 (S.D. Ohio 2019).

evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2).

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors,[6] including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9.

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id.* Put simply, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id.* (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). In the absence of a controlling treating source opinion, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other

---

[6] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

6

evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

### A. Opinion Evidence Regarding Physical Limitations

With regard to Plaintiff's physical impairments, treating physical therapist Ms. Chorny[7] opined in August 2014 that Plaintiff "struggles to sit/stand for any length"; is "unable to bend forward"; and struggles with activities of daily living in that she "is unable to do any task very long." PageID 928.

Record reviewer Dr. Hall opined on December 4, 2014 that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and walk about 6 hours per workday; sit 6 hours per workday; occasionally stoop, kneel, crouch, and climb ramps and stairs; never crawl and climb ropes, ladders or scaffolds; and not work lengthy time periods in an environment with extreme cold, extreme heat, humidity, hazards, fumes, dust, odors, gasses, and poor ventilation. PageID 139-40.

Record reviewer Michael Delphia M.D. issued an opinion on March 18, 2015 identical to Dr. Hall's opinion. PageID 176-77.

---

[7] In addition to "medical source opinions," opinions from "other sources" can be used to establish the severity of a claimant's impairment and establish how impairments affect a claimant's ability to work. 20 C.F.R. § 404.1513(d). "Other sources" include medical sources such as nurse practitioners, physical therapists, or counselors. *Id*. Although opinions from "other medical sources" who have treated a claimant are not entitled to controlling weight like those of a treating physician or psychologist, "other source" opinions may be entitled to more weight than "acceptable medical sources" under the unique circumstances of a given case. *See* Soc. Sec. Ruling ("SSR") 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006). In fact, the opinions of "other sources" may even be given more weight than a treating physician if the "other sources" have seen the claimant more frequently than the "acceptable sources" and have provided better explanations for their opinions. *Id*. An ALJ must weigh the opinions of "other sources" using the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.*, "how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment." *Williamson v. Comm'r of Soc. Sec.*, No. 1:14-cv-731, 2016 WL 255033, at *8 (S.D. Ohio Jan. 20, 2016); *see also* 20 C.F.R. § 404.1527(c).

On December 15, 2015, treating family physician Dr. Khavari opined that Plaintiff was limited to standing for 30 minutes at a time; sitting for 30 minutes at a time; working 4 hours per workday; lifting 20 pounds frequently; and occasionally bending, stooping, balancing, manipulating with either hand, and raising either arm above shoulder level.  PageID 1233-34.  In addition, Dr. Khavari opined that Plaintiff would need to elevate her legs at or above waist level occasionally during the workday and could not perform full-time competitive work on a sustained basis without being absent two times per month or being off-task more than 15% of the workday.[8]  PageID 1234.  On January 20, 2016, she followed up her opinions with a statement that Plaintiff's impairments "impact her ability to work full-time" and that she "should be limited to work on a part-time basis at 20-25 house [per] week."  PageID 1236.

On March 8, 2016, treating pulmonologist Dr. Quadri opined that, because of her asthma, Plaintiff could stand for 30 minutes at a time; sit for 15 minutes at a time; work up to 4 hours per workday; frequently lift 20 pounds; and cannot tolerate dust, smoke and fumes in her working environment.  PageID 1237-38.

B.     **Weighing of Opinions From Dr. Khavari and Ms. Chorny**

The ALJ found Dr. Khavari's treating opinion entitled to "little weight."  PageID 1599. In so finding, the ALJ found:

> The level of functional imitation described by Dr. Khavari seems somewhat excessive in view of the claimant's treatment history and lack of strong objective evidence of significant physical abnormality.  Dr. Khavari's imposed specific functional limitations seem to conform more to the claimant's subjective complaints and allegations rather than medically necessary restrictions.

PageID 1597.  The ALJ further stated that Plaintiff's "allegations such as headaches, fatigue, and

---

[8] The Vocational Expert in this case testified that an individual could not maintain full-time competitive employment if absent two times per month.  PageID 1643.

8

'brain fog' are entirely subjective and lacking any support in the objective medical record."

PageID 1598. Finally, the ALJ stated:

> It is apparent that Dr. Khavari based her assessment of claimant's functional capabilities on the claimant's own subjective complaints (without much, if any, objective support in the medical record). There is no apparent or logical basis for restricting the claimant to working only 20-25 hours of work per week as suggested by Dr. Khavari. There is also no plausible basis for concluding that the claimant would likely miss work more than two times per month or that she would be 'off task' up to 15 percent of the time during any given workday. Those conclusions are entirely speculative. Finally, the is no convincing evidence to show that claimant would need to elevate her legs above waist level occasionally. The extent of limitation described by Dr. Khavari could only be based on uncritical acceptance of the claimant's subjective complaints.

PageID 1599.

The ALJ's rejected Ms. Chorny's opinion for similar reasons, concluding that "[t]he objective medical evidence and clinical findings of record do not document the existence of any physical impairment that would be expected to cause the functional restrictions purported to exist by physical therapist Ms. Chorny" and, thus, her opinion "could only be based on uncritical acceptance of the claimant's own allegations and subjective complaints." PageID 1599.

While the ALJ suggests that the record is devoid of objective evidence supportive of Dr. Khavari's and Ms. Chorny's opinions, the undersigned's careful review of the record reveals quite the contrary.[9] Physical examination notes throughout the record document findings of obesity;

---

[9] Even if the record were devoid of clinical or imaging findings, the undersigned would nevertheless question the ALJ's conclusion in light of the fact that Plaintiff suffers from the severe impairment of fibromyalgia. PageID 1587. "Fibromyalgia can be disabling even in the absence of objectively measurable signs and symptoms." *Lawson v. Astrue*, 695 F. Supp. 2d 729, 744 (S.D. Ohio 2010).

9

anxiousness[10]; tearfulness; tenderness and pain with motion in the neck; muscle spasms in the neck; sinus tenderness; cough triggered with deep breaths; edema in the feet; antalgic gait; inability to get comfortable in a chair; tenderness on palpation in the lumbar spine and the sacroiliac joint; muscle spasm in the lumbar paraspinal muscles (described on at least one occasion as "significant"); muscle spasm in the cervical paraspinal muscles; spasm in the bilateral trapezius muscles; abdominal tenderness in the left lower quadrant; tenderness in the elbows; and knee swelling.  PageID 541, 548-49, 732, 889, 1286, 1836-37, 2225, 2229.  Objective imaging of Plaintiff's lumbar spine in May 2013 revealed "probable degenerative endplate signal change of the inferior margin of L4 on the left" with "some far left lateral spurring at the L4-3 level suggested."  PageID 899.  X-rays in February 2019 reveal mild degenerative changes in Plaintiff's lumbar and thoracic spine, as well as mild facet arthropathic changes throughout Plaintiff's cervical spine.  PageID 2754.

In light of these clinical and imaging findings throughout the record, substantial evidence fails to support the ALJ's conclusion that the record "lack[s] any strong objective evidence of significant physical abnormality"; that Dr. Khavari or Ms. Chorny based their assessments of Plaintiff's functional capabilities on her "own subjective complaints (without much, if any, objective support in the record)"; that "[t]here is no logical basis for restricting the claimant to working only 20-25 hours of work per week"; and that "no plausible basis [exists] for concluding that [Plaintiff] would likely miss work more than two times per month or that she would be 'off

---

[10] While the undersigned's opinion herein is limited to opinion evidence regarding Plaintiff's physical limitations – and specifically the opinion evidence submitted by Dr. Khavari and Ms. Chorny -- it is important to note evidence of record suggesting that "the majority of Janice's issues and pain maybe actually stemming from underlying psychological issues and stress."  PageID 2751.  Thus, on remand, the undersigned concludes that it is important for the ALJ to also reconsider opinion evidence from mental health sources and to seriously evaluate Plaintiff's limitations based on consideration of her impairments in combination.

task' up to 15 percent of the time during any given workday."[11] PageID 1597-99. Accordingly, the ALJ's non-disability finding should be reversed on this basis alone.[12]

The undersigned also finds error in the ALJ's weighing of opinion evidence offered by record reviewers Hall and Delphia. PageID 1600. In giving "moderate weight" to the conclusions of these non-examining physicians, the ALJ found their opinions "generally supported by the overall evidence or record as well as Plaintiff's ongoing work activity." *Id*. In light of the abnormal clinical and imaging findings of record -- some of which these record reviewers had no opportunity to review -- it is unclear, in the absence of a specific explanation by the ALJ, how the record evidence supports their conclusions. The absence of specific explanation or analysis by the ALJ in this this regard is error, *see Marks v. Colvin*, 201 F. Supp. 3d 870, 884 (S.D. Ohio 2016), and evidences the ALJ's application of great scrutiny to treating opinions, which "is precisely the inverse of the analysis that the regulation requires." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) ("A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires").

## IV.

When, as here, the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to reverse and remand the matter for rehearing, or to reverse and order an award of benefits. The Court has authority to affirm, modify or reverse the

---

[11] With regard to absenteeism, Plaintiff testified during the administrative hearing that, while she continues to work part-time, she often has to leave work early because of her symptoms and, thankfully, her employer is flexible with her absences because of her extensive experience in the job. PageID 1635, 1637. In his decision, the ALJ does not acknowledge this testimony when describing Plaintiff's continued employment.

[12] Notably, following this Court's previous remand, the Appeals Council essentially concluded the same. PageID 1690.

Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987). That standard has not been met in this instance, and a remand for further proceedings is thus proper.

## V.

**IT IS THEREFORE RECOMMENDED THAT:** (1) the ALJ's non-disability finding be found unsupported by substantial evidence, and **REVERSED**; (2) this matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and (3) this case be **CLOSED**.


Date:  August 4, 2020                              s/ Michael J. Newman
                                                                                            Michael J. Newman
                                                                                            United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).  Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).